# EXHIBIT 1

STATE OF ILLINOIS     )
                         )
COUNTY OF C O O K   )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| HAKAN VERCAN and<br>KEVSER VERCAN           ) | |
|                    ) | |

HAKAN VERCAN and    )
KEVSER VERCAN     )
             )
    Plaintiffs,     )
             )
v.             )  No.  10 L 7578
             )
THE BOEING COMPANY   )
             )
    Defendant     )

## NOTICE OF FILING

To:  See attached service list.

   PLEASE TAKE NOTICE that on the 8th day of July, 2010, we filed with the Clerk of the Circuit Court of Cook County, State of Illinois, **Proof of Service on Defendant The Boeing Company,** copies of which are attached hereto.

                    **CLIFFORD LAW OFFICES, P.C.**
                    120 North LaSalle Street
                    31st Floor
                    Chicago, IL 60602
                    (312) 899-9090
                    Atty. No.  32640

## PROOF OF SERVICE

   The undersigned, being first duly sworn on oath, deposes and says that she served a copy of the above Notice, together with said documents, upon the above-named, by enclosing a true and correct copy of the same in an addressed envelope and depositing the same in the U.S. Mail at 120 North LaSalle Street, Chicago, Illinois, before the hour of 5:00 p.m. on the 8th day of July, 2010.

[X]  Under penalties as provided by law pursuant to 735 ILCS 5/1-109 (1993), I certify that the statements set forth herein are true and correct.

*ER, et al. v. THE BOEING COMPANY*
Our File No.: 09-0064
Case Nos.: Er - 09 L 013791    Kaya - 09 L 013794    Ledford - 09 L 013786

# SERVICE LIST

### *Attorneys for the Boeing Company*
Michael B. Slade
Daniel R. Lombard
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
312-862-2000
312-862-2200 Fax
michael.slade@kirkland.com
daniel.lombard@kirkland.com

- and -

Craig S. Primis, P.C.
Kirkland & Ellis LLP
655 15th St., N.W.
Washington, DC 20005
202-879-5000
202-879-5200 Fax
craig.primis@kirkland.com

Marc S. Moller
Justin T. Green
Orla M. Brady
Kreindler & Kreindler LLP
100 Park Avenue
New York, New York 10017
212-687-8181
212-972-9432 Fax
mmoller@kreindler.com
jgreen@kreindler.com
obrady@kreindler.com

- and -

Anthony Tarricone
Kreindler & Kreindler LLP
277 Darthmouth Street
Boston, Massachusetts 02116
617-424-9100
617-424-9120 Fax
atarricone@kreindler.com

### *Attorneys for Plaintiff Ledford and Gumus*
Todd Smith
Brian LaCien
Power Rogers and Smith, PC
Three First National Plaza
70 West Madison Street
Suite 5500
Chicago, Illinois 60602
312-236-9381
312-236-0920 Fax
tsmith@prslaw.com
blacien@prslaw.com

- and -

### *Attorneys for Plaintiffs Yango, et al.*
Monica Kelly
Ray Willis Welcher
RIBBECK LAW CHARTERED
505 N. Lake Shore Drive
Chicago, Illinois 60611
(312) 806-6776

AFFIDAVIT OF SPECIAL PROCESS SERVER

_Cook_ COUNTY                    CASE NUMBER _2010 L 0075 78_

CASE NAME: PLAINTIFF: _HAKAN VERCAN & KEVSER VERCAN_

VS

DEFENDANT: _THE BOEING Co._

DAVID E. MACEK, BEING FIRST DULY SWORN ON OATH DEPOSES AND SAYS:

I.    THAT HE SERVED THE WITHIN SUMMONS AND COMPLAINT BY
      LEAVING A COPY OF EACH WITH SAID DEFENDANT/RESPONDENT,
      _TED PAJAK / BOEING Co_ , PERSONALLY ON _6/30_ , 20 _10_.

II.   THAT HE SERVED THE SUMMONS AND COMPLAINT ON THE NAMED
      DEFENDANT/RESPONDENT BY LEAVING A COPY OF EACH AT HIS
      USUAL PLACE OF ABODE WITH _____,
      A MEMBER OF THE HOUSEHOLD OF THE AGE OF 13 YEARS OR ABOVE
      AND INFORMED THE PERSON OF THE CONTENTS THEREIN ON
      _____, 20___.
      FURTHER, HE MAILED A COPY OF EACH IN A SEALED ENVELOPE WITH
      POSTAGE PAID TO THE DEFENDANT/RESPONDENT_____
      AT HIS USUAL PLACE OF ABODE ON _____ 20___.

III.  (a) THAT THE SEX, RACE, AND APPROXIMATE AGE OF THE
          DEFENDANT/RESPONDENT OR OTHER PERSON WITH WHOM HE
          LEFT THE SUMMONS AND COMPLAINT ARE:

      SEX _M_ ; RACE _CAU_ ; APPROXIMATE AGE _50_

      (b) THAT THE PLACE, DATE, AND TIME OF SERVICE OF THE SUMMONS
          AND COMPLAINT LEFT WITH THE DEFENDANT/RESPONDENT OR
          OTHER PERSON WERE:
      PLACE _100 N. RIVERSIDE PLAZA, CHICAGO, IL 60606_.
      DATE _6/30/10_ ; TIME OF DAY _1:40 pm_.

                                    _____
                                    SPECIAL PROCESS SERVER

SIGNED AND SWORN BEFORE ME
THIS _19_ DAY OF _July_ , 20 _10_

_____
            NOTARY PUBLIC

                    ┌─────────────────────────────────┐
                    │          OFFICIAL SEAL          │
                    │        LENA A CONFORTI          │
                    │ NOTARY PUBLIC - STATE OF ILLINOIS │
                    │ MY COMMISSION EXPIRES:06/05/12  │
                    └─────────────────────────────────┘

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | (7-90) CCG-I |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

HAKAN VERCAN and )
KEVSER VERCAN, )
 )
     Plaintiff, )
 )
v. )    No.
 )    Please serve:  The Boeing Company
THE BOEING COMPANY )                   c/o Jim McNerney (President)
 )                   100 N. Riverside Plaza
 )                   Chicago, Illinois 60606
     Defendants. )

### SUMMONS

**To each defendant:**

     **YOU ARE SUMMONED and required to file an answer in this case, or otherwise file your appearance in the office of the clerk of this court (located in the Richard J. Daley Center, Room * 801 Chicago, Illinois 60602) within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.**

**To the officer:**

     **This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.**

WITNESS,_____**JUN 3 0 2010**_____,20_____

                                             _____
                                          **DOROTHY BROWN, Clerk of Court**

| | |
|---|---|
| **Name:** CLIFFORD LAW OFFICES, P.C. | |
| **Attorney for:** Plaintiff | Date of service:_____6\|30_____,20 10 |
| **Address:** 120 N. LaSalle St., Suite 3100 | |
| **City:** Chicago | |
| **Telephone:** (312) 899-9090 | |
| **Atty. No.:** 32640 | |

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**\*Law Division Room 801**                      **Chancery-Divorce Division Room 802**
**County Division Room 801**                       **Probate Division Room 1202**



**CORPORATION SERVICE COMPANY·**

# Notice of Service of Process

MJB / ALL
Transmittal Number: 7786829
Date Processed: 07/01/2010

| Primary Contact: | Cynthia J. Pearson<br>The Boeing Company<br>100 N Riverside MC 5003-1001<br>Chicago, IL 60606-1596 |
|---|---|

| | |
|---|---|
| **Entity:** | The Boeing Company<br>Entity ID Number 1901768 |
| **Entity Served:** | The Boeing Company |
| **Title of Action:** | Hakan Vercan vs. The Boeing Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Product Liability |
| **Court:** | Cook County Circuit Court, Illinois |
| **Case Number:** | 2010L007578 |
| **Jurisdiction Served:** | Illinois |
| **Date Served on CSC:** | 07/01/2010 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Michael S. Krzak<br>312-899-9090 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **(7-90) CCG-1** |

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

HAKAN VERCAN and )
KEVSER VERCAN, )
                                )     2010L007578
        Plaintiff,           )     CALENDAR/ROOM C
                                )     TIME 00:00
v.                               )     Product Liability
                                )     No.
THE BOEING COMPANY       )     Please serve: The Boeing Company
                                )     Illinois Corporation Service
                                )     801 Adlai Stevenson Drive
        Defendants.       )     Springfield, Illinois 62703

### SUMMONS

**To each defendant:**

    YOU ARE SUMMONED and required to file an answer in this case, or otherwise file your appearance in the office of the clerk of this court (located in the Richard J. Daley Center, Room * 801 Chicago, Illinois 60602) within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.

**To the officer:**

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

WITNESS,_____ JUN 3 0 2010 _____,20_____    DOROTHY BROWN
                                                 CLERK OF CIRCUIT COURT

                                   DOROTHY BROWN, Clerk of Court

| | |
|---|---|
| Name:    CLIFFORD LAW OFFICES, P.C. | |
| Attorney for: Plaintiff | Date of service:_____,20____ |
| Address:    120 N. LaSalle St., Suite 3100 | |
| City:       Chicago | |
| Telephone: (312) 899-9090 | |
| Atty. No.:   32640 | |

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**\*Law Division Room 801**                    **Chancery-Divorce Division Room 802**
**County Division Room 801**                  **Probate Division Room 1202**

STATE OF ILLINOIS    )
                         )
COUNTY OF C O O K    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| HAKAN VERCAN and<br>KEVSER VERCAN                 )<br>                             )<br>         Plaintiffs,    )<br>v.                          )<br>                             )<br>THE BOEING COMPANY    )<br>                             )<br>        Defendants.    ) | No.    *10 C 7578* |

## ROUTINE ORDER

This matter coming to be heard on Plaintiff's Motion to Appoint Special Process Server, due notice having been giving, and the Court being fully advised in the premises:

IT IS HEREBY ORDER THAT

Bill Clutter of Bill Clutter Investigations, and any other employee of Bill Clutter Investigations who is over the age of 18, license number 117-001206; and/or Dennis Fredrickson of Sphan Breckenridge & Associates and any other employee of Sphan-Breckenridge & Associates who is over the age of 18, license number 117-000498, be appointed Special Process Server for the purpose of serving summons and Plaintiff's Complaint upon the Defendant, The Boeing Company.

ENTERED:

_____
JUDGE

CLIFFORD LAW OFFICES, P.C.
Attorneys for Plaintiff
120 North LaSalle Street
Suite 3100
Chicago, Illinois 60602
(312) 899-9090
Attorney No.: 32640

**ENTERED**
JUDGE WILLIAM D. MADDUX-1559

JUN 3 0 2010

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | (7-90) CCG-I |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

HAKAN VERCAN and )
KEVSER VERCAN, )
)
       Plaintiff, )
)
v. )   No.
)   Please serve:  The Boeing Company
THE BOEING COMPANY )                  c/o Jim McNerney (President)
)                  100 N. Riverside Plaza
)                  Chicago, Illinois 60606
       Defendants. )

### SUMMONS

**To each defendant:**

    YOU ARE SUMMONED and required to file an answer in this case, or otherwise file your appearance in the office of the clerk of this court (located in the Richard J. Daley Center, Room * 801 Chicago, Illinois 60602) within 30 days after service of this summons, not counting the day of service. **IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.**

**To the officer:**

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

**WITNESS,**_____**,20**_____

                                     _____
                                     **DOROTHY BROWN, Clerk of Court**

**Name:**      CLIFFORD LAW OFFICES, P.C.
**Attorney for:** Plaintiff                 **Date of service:**_____**,20**_____
**Address:**   120 N. LaSalle St., Suite 3100
**City:**       Chicago
**Telephone:** (312) 899-9090
**Atty. No.:**  32640

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**\*Law Division Room 801**                            **Chancery-Divorce Division Room 802**
**County Division Room 801**                        **Probate Division Room 1202**

| 2120 – Served | 2121 – Served |
|---|---|
| 2220 – Not Served | 2221 – Not Served |
| 2320 – Served By Mail | 2321 – Served By Mail |
| 2420 – Served By Publication | 2421 – Served By Publication |
| SUMMONS | (7-90) CCG-I |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| HAKAN VERCAN and | ) | |
| KEVSER VERCAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | Please serve: The Boeing Company |
| THE BOEING COMPANY | ) | c/o Jim McNerney (President) |
| | ) | 100 N. Riverside Plaza |
| | ) | Chicago, Illinois 60606 |
| Defendants. | ) | |

### SUMMONS

**To each defendant:**

YOU ARE SUMMONED and required to file an answer in this case, or otherwise file your appearance in the office of the clerk of this court (located in the Richard J. Daley Center, Room * 801 Chicago, Illinois 60602) within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.

**To the officer:**

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

WITNESS,_____JUN 8 2010_____,20_____

DOROTHY BROWN, Clerk of Court

| | |
|---|---|
| **Name:** CLIFFORD LAW OFFICES, P.C. | |
| **Attorney for:** Plaintiff | Date of service:_____,20____ |
| **Address:** 120 N. LaSalle St., Suite 3100 | |
| **City:** Chicago | |
| **Telephone:** (312) 899-9090 | |
| **Atty. No.:** 32640 | |

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

| | |
|---|---|
| ***Law Division Room 801** | **Chancery-Divorce Division Room 802** |
| **County Division Room 801** | **Probate Division Room 1202** |

STATE OF ILLINOIS      )
                              ) SS

COUNTY OF COOK      )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

| | |
|---|---|
| HAKAN VERCAN and<br>KEVSER VERCAN           ) | |
|          ) | |
|     Plaintiffs,           ) | |
|          ) | |
| v.                  ) | No. |
|          ) | |
| THE BOEING COMPANY,    ) | ***Plaintiff Demands*** |
|          ) | ***Trial By Jury*** |
|     Defendant.       ) | |

## COMPLAINT AT LAW

### COUNT I

### Negligence - Defendant The Boeing Company

Plaintiff HAKAN VERCAN, by and through his attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendant, THE BOEING COMPANY, (hereinafter "BOEING"), states as follows:

    1.     On February 25, 2009, Defendant, BOEING, was engaged in the business of designing, manufacturing, assembling, testing, servicing, and selling commercial aircraft and various component parts for those aircraft.

    2.     Defendant BOEING is a citizen of Cook County, Illinois.

    3.     On February 25, 2009, Turkish Airlines, Inc., by and through its duly authorized agents and/or employees, owned, operated, managed, maintained and controlled a certain Boeing 737-800 aircraft, which was designated as Flight 1951 (hereinafter referred to as "Flight 1951" or "subject aircraft") and was scheduled to depart from Ataturk International Airport (IST) in Istanbul,

Turkey and land at Amsterdam Schiphol Airport (AMS) in Amsterdam, Netherlands.

4.      On a date prior to February 25, 2009, Defendant BOEING designed, manufactured, assembled, tested, serviced, and/or sold the subject aircraft and various components of the subject aircraft including, but not limited to, the radio altimeters, autothrottle, autopilot, flight control computers, and/or primary flight displays.

5.      The radio altimeters were located on the right and left sides of the cockpit and were intended to provide accurate data of the subject aircraft's altitude above ground level from ground level to 2,500 feet.

6.      The subject aircraft had an autothrottle system that was intended to maintain the airspeed as selected by the pilots.

7.      The subject aircraft's autothrottle system relied on the data from the left radio altimeter and was designed to set the throttles at flight idle when the radio altimeter indicates that the subject aircraft was on or very close to the ground.

8.      Prior to February 25, 2009, Defendant BOEING wrote and/or approved instructions and warnings for the subject aircraft, including flight manuals, operation manuals, maintenance manuals, maintenance instructions, inspection schedules and service life schedules to be followed by certain owners and operators, including Turkish Airlines, for the continued airworthiness and safe flight of the Model 737-800 aircraft, including the subject aircraft.

9.      Prior to February 25, 2009, the Defendant BOEING provided customer support to Turkish Airlines, as it related to the subject aircraft and other 737-800 model aircraft in its possession, including Alert Service Bulletins, Service Bulletins, Service Letters, Technical Advisories, aircraft parts, engineering and training personnel, and other like customer support

2

services.

10.     On February 25, 2009, Plaintiff HAKAN VERCAN was a fare-paying passenger on Flight 1951.

11.     On February 25, 2009, Flight 1951 was engaged in an Instrument Landing System (ILS) approach to runway 18R at Amsterdam Schiphol Airport when the left radio altimeter malfunctioned, causing the autothrottle to disregard the pilots' selected speed setting and to reduce the throttle level position to flight-idle, thereby allowing the airspeed of the subject aircraft to decrease 40 knots below the selected airspeed.

12.     On February 25, 2009, as a result of this loss of airspeed, Flight 1951 lost control, and the subject aircraft crashed into a field approximately one (1) mile north of runway 18R at Amsterdam Schiphol Airport in Amsterdam, Netherlands.

13.     At all times relevant hereto, Defendant, BOEING, owed Plaintiff HAKAN VERCAN the duty to design, manufacture, assemble, and/or sell the subject aircraft and the various components, some of which are mentioned above, in a reasonably safe condition.

14.     On and prior to February 25, 2009, in violation of the aforesaid duties, Defendant BOEING, by and through its employees and/or actual/apparent agents, was negligent in one or more of the following ways:

> a.     Failed to provide proper and effective radio altimeters on their aircraft including the subject aircraft;
>
> b.     Failed to provide proper and effective flight control computers on their aircraft including the subject aircraft;
>
> c.     Failed to provide a proper and effective autothrottle on their aircraft including the subject aircraft;

d.   Failed to provide proper and effective quick reference handbook procedures for radio altitude failures on their aircraft including the subject aircraft;

e.   Failed to provide proper and effective simulator training events for unflagged radio altitude failures on their aircraft;

f.   Failed to provide proper and effective autopilot on their aircraft including the subject aircraft;

g.   Failed to provide a proper and effective comparator function for radio altitude on their aircraft including the subject aircraft;

h.   Failed to provide proper and effective radio altitude fault detection on their aircraft including the subject aircraft;

i.   Failed to provide adequate warning regarding the use of radio altimiters on their aircraft;

j.   Failed to provide adequate warning regarding the use of flight control systems on their aircraft including the subject aircraft;

k.   Failed to provide adequate warning regarding the use of autothrottle on their aircraft including the subject aircraft;

l.   Failed to provide adequate warning regarding the use of autopilot on their aircraft including the subject aircraft;

m.   Failed to provide adequate warning regarding the lack of a comparator function for radio altitude on their aircraft including the subject aircraft;

n.   Failed to warn pilots to constantly monitor airspeed when autopilot and auto-throttle are engaged, especially during ILS approach;

o.   Failed to provide software that notified the pilots of a radio altitude failure on the primary flight display as a result of a problem with the radio altimeter transducer or antenna or other failure mode;

p.   Failed to provide a warning to the pilots that the primary flight display would not notify them of a failure of the radio altimeter if the radio altimeter returned an improper value in the manner that it would in the event of other types of radio altitude failures;

q.   Failed to properly and/or adequately inspect, maintain and/or repair the

4

subject aircraft designated as flight number 1951;

r.    Failed to maintain the subject aircraft's radio altimeters;

s.    Permitted and allowed the subject aircraft to be flown when it knew or should have known it was not in an airworthy condition;

t.    Improperly and inadequately inspected and maintained the subject aircraft;

u.    Failed to properly and adequately test the subject aircraft;

v.    Improperly and inadequately tested and inspected the subject aircraft;

w.    Improperly designed the radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays including the subject aircraft;

x.    Improperly manufactured the radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays including the subject aircraft;

y.    Improperly assembled the radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays including the subject aircraft;

z.    Failed to provide proper and effective master minimum equipment list on their aircraft including the subject aircraft;

aa.    Failed to perform a proper and effective system safety analysis during original design of their aircraft including the subject aircraft;

bb.    Failed to perform proper and effective continuing airworthiness functions after in-service events revealed radio altimeter failures such as occurred in this crash;

cc.    Failed to perform proper and effective system safety analysis after in-service events revealed radio altimeter failures such as occurred in this crash;

dd.    Failed to provide low airspeed or low energy warning functions on their aircraft;

ee.    Was otherwise careless and negligent.

15.    As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, on February 25, 2009, at 10:31 a.m. CET, the left radio altimeter malfunctioned, causing the autothrottle to disregard the pilots' selected speed setting and to reduce the throttle level position to flight-idle, thereby allowing the airspeed of the subject aircraft designated as Flight 1951 to decrease 40 knots below the selected airspeed. As a result of this loss of airspeed, the subject aircraft designated as Flight 1951 lost control and crashed into a field approximately one (1) mile north of runway 18R at Amsterdam Schiphol Airport in Amsterdam, Netherlands.

16.    When the subject aircraft crashed, Plaintiff HAKAN VERCAN was caused to and will in the future experience great pain and suffering; has suffered and will in the future suffer disability and disfigurement; has been caused to incur and will in the future incur expenses for necessary medical care, treatment and services; has suffered and will in the future suffer the loss of the value of his time, earnings, profits and salaries and has been and will be damaged in his earning capacity, and has otherwise been damaged in a personal and pecuniary nature.

17.    As a direct and proximate result of the negligence of the Defendant, Plaintiff HAKAN VERCAN suffered fright, terror, mental anguish, emotional distress, and suffering resulting in physical manifestations and sustained permanent and temporary injuries of a personal and pecuniary nature.

WHEREFORE, the Plaintiff HAKAN VERCAN prays that judgment be entered in his favor and against the Defendant, THE BOEING COMPANY, in a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00), the minimal jurisdiction amount of the Law Division of the Circuit Court of Cook County, Illinois together with interests and the costs of this action.

6

## COUNT II

### Strict Liability - Defendant The Boeing Company

Plaintiff HAKAN VERCAN, by and through his attorneys, CLIFFORD LAW OFFICES,

P.C., complaining of Defendant, THE BOEING COMPANY, (hereinafter "BOEING"), states as

follows:

1.　　　On February 25, 2009, Defendant, BOEING, was engaged in the business of

designing, manufacturing, assembling, testing, servicing, and selling commercial aircraft and

various component parts for those aircraft.

2.　　　Defendant BOEING is a citizen of Cook County, Illinois.

3.　　　On February 25, 2009, Turkish Airlines, Inc., by and through its duly authorized

agents and/or employees, owned, operated, managed, maintained and controlled a certain Boeing

737-800 aircraft, which was designated as Flight 1951 (hereinafter referred to as "Flight 1951" or

"subject aircraft") and was scheduled to depart from Ataturk International Airport (IST) in Istanbul,

Turkey and land at Amsterdam Schiphol Airport (AMS) in Amsterdam, Netherlands.

4.　　　On a date prior to February 25, 2009, Defendant, BOEING, designed, manufactured,

assembled, tested, serviced, and/or sold the subject aircraft and various components of the subject

aircraft including, but not limited to, the radio altimeters, autothrottle, autopilot, flight control

computers, and/or primary flight displays.

5.　　　The radio altimeters were located on the right and left sides of the cockpit and were

intended to provide accurate data of the subject aircraft's altitude above ground level from ground

level to 2,500 feet.

6.　　　The subject aircraft had an autothrottle system that was intended to maintain the

airspeed as selected by the pilots.

7.      The subject aircraft's autothrottle system relied on the data from the left radio altimeter and was designed to set the throttles at flight idle when the radio altimeter indicates that the subject aircraft was on or very close to the ground.

8.      Prior to February 25, 2009, the Defendant, BOEING, wrote and/or approved instructions and warnings for the subject aircraft, including flight manuals, operation manuals, maintenance manuals, maintenance instructions, inspection schedules and service life schedules to be followed by certain owners and operators, including Turkish Airlines, for the continued airworthiness and safe flight of the Model 737-800 aircraft, including the subject aircraft.

9.      Prior to February 25, 2009, the Defendant, BOEING, provided customer support to Turkish Airlines, as it related to the subject aircraft and other 737-800 model aircraft in its possession, including Alert Service Bulletins, Service Bulletins, Service Letters, Technical Advisories, aircraft parts, engineering and training personnel, and other like customer support services.

10.     On February 25, 2009, Plaintiff HAKAN VERCAN was a fare-paying passenger on Flight 1951.

11.     On February 25, 2009, Flight 1951 was engaged in an Instrument Landing System (ILS) approach to runway 18R at Amsterdam Schiphol Airport when the left radio altimeter malfunctioned, causing the autothrottle to disregard the pilots' selected speed setting and to reduce the throttle level position to flight-idle, thereby allowing the airspeed of the subject aircraft to decrease 40 knots below the selected airspeed.

12.     On February 25, 2009, as a result of this loss of airspeed, Flight 1951 lost control,

8

and the subject aircraft crashed into a field approximately one (1) mile north of runway 18R at Amsterdam Schiphol Airport in Amsterdam, Netherlands.

13.     At all times relevant hereto, Defendant, BOEING, owed Plaintiff HAKAN VERCAN the duty to design, manufacture, assemble, and/or sell the subject aircraft and the various components, some of which are mentioned above, in a reasonably safe condition.

14.     At all relevant times including the time the subject aircraft left the custody and control of Defendant, BOEING, the subject aircraft was defective and unreasonably dangerous in one or more of the following ways:

>     a.     Lacked proper and effective altimeters;
>
>     b.     Lacked proper and effective flight control computers;
>
>     c.     Lacked a proper and effective autothrottle;
>
>     d.     Lacked proper and effective quick reference handbook procedures for radio altitude failures;
>
>     e.     Lacked proper and effective simulator training events for unflagged radio altitude failures;
>
>     f.     Lacked a proper and effective autopilot;
>
>     g.     Lacked a proper and effective comparator function for radio altitude;
>
>     h.     Lacked adequate warning regarding the use of radio altimeters;
>
>     i.     Lacked adequate warning regarding the use of flight control systems;
>
>     j.     Lacked adequate warning regarding the use of autothrottle;
>
>     k.     Lacked adequate warning regarding the use of autopilot;
>
>     l.     Lacked adequate warning regarding the lack of a comparator function for radio altitude;

9

m.    Failed to warn pilots to constantly monitor aircraft velocity when autopilot is engaged, especially during ILS approach;

n.    Failed to provide software that notified the pilots of a radio altitude failure on the primary flight display as a result of a problem with the radio altimeter transducer or antenna;

o.    Failed to provide a warning to the pilots that the primary flight display would not notify them of a failure of the radio altimeter if the radio altimeter returned an improper value in the manner that it would in the event of other types of radio altitude failures;

p.    Failed to properly and/or adequately inspect, maintain and/or repair the aircraft designated as flight number 1951;

q.    Failed to maintain the aforementioned aircraft's radio altimeters;

r.    Permitted and allowed the aforementioned Boeing 737-800 aircraft to be flown when it knew or should have known it was not in an airworthy condition;

s.    Improperly and inadequately inspected and maintained the aforementioned Boeing 737-800 aircraft;

t.    Failed to properly and adequately test the aforementioned Boeing 737-800 aircraft;

u.    Improperly and inadequately tested and inspected the aforementioned Boeing 737-800 aircraft;

v.    The radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays were otherwise improperly designed;

w.    The radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays were otherwise improperly manufacturers;

x.    The radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays were otherwise improperly assembled;

y.    Lacked proper and effective radio altitude fault detection on their aircraft;

z.    Lacked low airspeed or low energy warning functions on their aircraft;

aa.    The aforementioned aircraft was otherwise defective.

15.    As a direct and proximate result of one or more of the above-listed defective and unreasonably dangerous conditions, on February 25, 2009, at 10:31 a.m. CET, the left radio altimeter malfunctioned, causing the autothrottle to disregard the pilots' selected speed setting and to reduce the throttle level position to flight-idle, thereby allowing the airspeed of the subject aircraft designated as Flight 1951 to decrease 40 knots below the selected airspeed. As a result of this loss of airspeed, the subject aircraft designated as flight number 1951 lost control and crashed into a field approximately one (1) mile north of runway 18R at Amsterdam Schiphol Airport in Amsterdam, Netherlands.

16.    When the subject aircraft crashed, Plaintiff HAKAN VERCAN was caused to and will in the future experience great pain and suffering; has suffered and will in the future suffer disability and disfigurement; has been caused to incur and will in the future incur expenses for necessary medical care, treatment and services; has suffered and will in the future suffer the loss of the value of his time, earnings, profits and salaries and has been and will be damaged in his earning capacity, and has otherwise been damaged in a personal and pecuniary nature.

17.    As a direct and proximate result of the negligence of the Defendant, Plaintiff HAKAN VERCAN suffered fright, terror, mental anguish, emotional distress, and suffering resulting in physical manifestations and sustained permanent and temporary injuries of a personal and pecuniary nature.

WHEREFORE, the Plaintiff HAKAN VERCAN prays that judgment be entered in his favor and against the Defendant, THE BOEING COMPANY, in a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00), the minimal jurisdiction amount of the Law Division of the Circuit Court

11

of Cook County, Illinois together with interests and the costs of this action.

## COUNT III

### Willful and Wanton - Defendant The Boeing Company

Plaintiff HAKAN VERCAN, by and through his attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendant THE BOEING COMPANY, (hereinafter "BOEING"), states as follows:

1.      On February 25, 2009, Defendant, BOEING, was engaged in the business of designing, manufacturing, assembling, testing, servicing, and selling commercial aircraft and various component parts for those aircraft.

2.      Defendant BOEING is a citizen of Cook County, Illinois.

3.      On February 25, 2009, Turkish Airlines, Inc., by and through its duly authorized agents and/or employees, owned, operated, managed, maintained and controlled a certain Boeing 737-800 aircraft, which was designated as Flight 1951 (hereinafter referred to as "Flight 1951" or "subject aircraft") and was scheduled to depart from Ataturk International Airport (IST) in Istanbul, Turkey and land at Amsterdam Schiphol Airport (AMS) in Amsterdam, Netherlands.

4.      On a date prior to February 25, 2009, Defendant, BOEING, designed, manufactured, assembled, tested, serviced, and/or sold the subject aircraft and various components of the subject aircraft including, but not limited to, the radio altimeters, autothrottle, autopilot, flight control computers, and/or primary flight displays.

5.      The radio altimeters were located on the right and left sides of the cockpit and were intended to provide accurate data of the subject aircraft's altitude above ground level from ground level to 2,500 feet.

12

6.      The subject aircraft had an autothrottle system that was intended to maintain the airspeed as selected by the pilots.

7.      The subject aircraft's autothrottle system relied on the data from the left radio altimeter and was designed to set the throttles at flight idle when the radio altimeter indicates that the subject aircraft was on or very close to the ground.

8.      Prior to February 25, 2009, the Defendant, BOEING, wrote and/or approved instructions and warnings for the subject aircraft, including flight manuals, operation manuals, maintenance manuals, maintenance instructions, inspection schedules and service life schedules to be followed by certain owners and operators, including Turkish Airlines, for the continued airworthiness and safe flight of the Model 737-800 aircraft, including the subject aircraft.

9.      Prior to February 25, 2009, the Defendant, BOEING, provided customer support to Turkish Airlines, as it related to the subject aircraft and other 737-800 model aircraft in its possession, including Alert Service Bulletins, Service Bulletins, Service Letters, Technical Advisories, aircraft parts, engineering and training personnel, and other like customer support services.

10.     On February 25, 2009, Plaintiff HAKAN VERCAN was a fare-paying passenger on Flight 1951.

11.     On February 25, 2009, Flight 1951 was engaged in an Instrument Landing System (ILS) approach to runway 18R at Amsterdam Schiphol Airport when the left radio altimeter malfunctioned, causing the autothrottle to disregard the pilots' selected speed setting and to reduce the throttle level position to flight-idle, thereby allowing the airspeed of the subject aircraft to decrease 40 knots below the selected airspeed.

13

12.     On February 25, 2009, as a result of this loss of airspeed, Flight 1951 lost control, and the subject aircraft crashed into a field approximately one (1) mile north of runway 18R at Amsterdam Schiphol Airport in Amsterdam, Netherlands.

13.     At all times relevant hereto, Defendant, BOEING, owed Plaintiff HAKAN VERCAN the duty to not willfully and wantonly design, manufacture, assemble, and/or sell the subject aircraft and the various components, some of which are mentioned above.

14.     On and prior to February 25, 2009, in violation of the aforesaid duties, Defendant BOEING, by and through its employees and/or actual/apparent agents, acted willfully and wantonly in one or more of the following ways:

   a.   Failed to provide proper and effective radio altimeters on their aircraft including the subject aircraft;

   b.   Failed to provide proper and effective flight control computers on their aircraft including the subject aircraft;

   c.   Failed to provide a proper and effective autothrottle on their aircraft including the subject aircraft;

   d.   Failed to provide proper and effective quick reference handbook procedures for radio altitude failures on their aircraft including the subject aircraft;

   e.   Failed to provide proper and effective simulator training events for unflagged radio altitude failures on their aircraft;

   f.   Failed to provide proper and effective autopilot on their aircraft including the subject aircraft;

   g.   Failed to provide a proper and effective comparator function for radio altitude on their aircraft including the subject aircraft;

   h.   Failed to provide proper and effective radio altitude fault detection on their aircraft including the subject aircraft;

   i.   Failed to provide adequate warning regarding the use of radio altimeters on

14

their aircraft;

j.        Failed to provide adequate warning regarding the use of flight control systems on their aircraft including the subject aircraft;

k.        Failed to provide adequate warning regarding the use of autothrottle on their aircraft including the subject aircraft;

l.        Failed to provide adequate warning regarding the use of autopilot on their aircraft including the subject aircraft;

m.       Failed to provide adequate warning regarding the lack of a comparator function for radio altitude on their aircraft including the subject aircraft;

n.        Failed to warn pilots to constantly monitor airspeed when autopilot and auto-throttle are engaged, especially during ILS approach;

o.        Failed to provide software that notified the pilots of a radio altitude failure on the primary flight display as a result of a problem with the radio altimeter transducer or antenna or other failure mode;

p.        Failed to provide a warning to the pilots that the primary flight display would not notify them of a failure of the radio altimeter if the radio altimeter returned an improper value in the manner that it would in the event of other types of radio altitude failures;

q.        Failed to properly and/or adequately inspect, maintain and/or repair the subject aircraft designated as flight number 1951;

r.        Failed to maintain the subject aircraft's radio altimeters;

s.        Permitted and allowed the subject aircraft to be flown when it knew or should have known it was not in an airworthy condition;

t.        Improperly and inadequately inspected and maintained the subject aircraft;

u.        Failed to properly and adequately test the subject aircraft;

v.        Improperly and inadequately tested and inspected the subject aircraft;

w.       Improperly designed the radio altimeters, flight control computers,

15

autothrottle, autopilot and/or primary flight displays including the subject aircraft;

x. Improperly manufactured the radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays including the subject aircraft;

y. Improperly assembled the radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays including the subject aircraft;

z. Failed to provide proper and effective master minimum equipment list on their aircraft including the subject aircraft;

aa. Failed to perform a proper and effective system safety analysis during original design of their aircraft including the subject aircraft;

bb. Failed to perform proper and effective continuing airworthiness functions after in-service events revealed radio altimeter failures such as occurred in this crash;

cc. Failed to perform proper and effective system safety analysis after in-service events revealed radio altimeter failures such as occurred in this crash;

dd. Failed to provide low airspeed or low energy warning functions on their aircraft;

ee. Was otherwise careless and negligent.

15. As a direct and proximate result of one or more of the aforesaid willful and wanton acts and/or omissions, on February 25, 2009, at 10:31 a.m. CET, the left radio altimeter malfunctioned, causing the autothrottle to disregard the pilots' selected speed setting and to reduce the throttle level position to flight-idle, thereby allowing the airspeed of the subject aircraft designated as Flight 1951 to decrease 40 knots below the selected airspeed. As a result of this loss of airspeed, the subject aircraft designated as Flight 1951 lost control and crashed into a field approximately one (1) mile north of runway 18R at Amsterdam Schiphol Airport in Amsterdam,

16

Netherlands.

16.     When the subject aircraft crashed, Plaintiff HAKAN VERCAN was caused to and

will in the future experience great pain and suffering; has suffered and will in the future suffer

disability and disfigurement; has been caused to incur and will in the future incur expenses for

necessary medical care, treatment and services; has suffered and will in the future suffer the loss

of the value of his time, earnings, profits and salaries and has been and will be damaged in his

earning capacity, and has otherwise been damaged in a personal and pecuniary nature.

17.     As a direct and proximate result of the willful and wanton conduct of the Defendant,

Plaintiff HAKAN VERCAN suffered fright, terror, mental anguish, emotional distress, and

suffering resulting in physical manifestations and sustained permanent and temporary injuries of

a personal and pecuniary nature.

WHEREFORE, Plaintiff HAKAN VERCAN prays that judgment be entered in his favor

and against the Defendant, THE BOEING COMPANY, in a sum in excess of FIFTY THOUSAND

DOLLARS ($50,000.00), the minimal jurisdiction amount of the Law Division of the Circuit Court

of Cook County, Illinois together with interests and the costs of this action.

## COUNT IV

### Negligence - Defendant The Boeing Company

Plaintiff KEVSER VERCAN, by and through her attorneys, CLIFFORD LAW OFFICES,

P.C., complaining of Defendant, THE BOEING COMPANY, (hereinafter "BOEING"), states as

follows:

1.     On February 25, 2009, Defendant, BOEING, was engaged in the business of

designing, manufacturing, assembling, testing, servicing, and selling commercial aircraft and

various component parts for those aircraft.

2.    Defendant BOEING is a citizen of Cook County, Illinois.

3.    On February 25, 2009, Turkish Airlines, Inc., by and through its duly authorized agents and/or employees, owned, operated, managed, maintained and controlled a certain Boeing 737-800 aircraft, which was designated as Flight 1951 (hereinafter referred to as "Flight 1951" or "subject aircraft") and was scheduled to depart from Ataturk International Airport (IST) in Istanbul, Turkey and land at Amsterdam Schiphol Airport (AMS) in Amsterdam, Netherlands.

4.    On a date prior to February 25, 2009, Defendant BOEING designed, manufactured, assembled, tested, serviced, and/or sold the subject aircraft and various components of the subject aircraft including, but not limited to, the radio altimeters, autothrottle, autopilot, flight control computers, and/or primary flight displays.

5.    The radio altimeters were located on the right and left sides of the cockpit and were intended to provide accurate data of the subject aircraft's altitude above ground level from ground level to 2,500 feet.

6.    The subject aircraft had an autothrottle system that was intended to maintain the airspeed as selected by the pilots.

7.    The subject aircraft's autothrottle system relied on the data from the left radio altimeter and was designed to set the throttles at flight idle when the radio altimeter indicates that the subject aircraft was on or very close to the ground.

8.    Prior to February 25, 2009, Defendant BOEING wrote and/or approved instructions and warnings for the subject aircraft, including flight manuals, operation manuals, maintenance manuals, maintenance instructions, inspection schedules and service life schedules to be followed

by certain owners and operators, including Turkish Airlines, for the continued airworthiness and safe flight of the Model 737-800 aircraft, including the subject aircraft.

9.      Prior to February 25, 2009, the Defendant BOEING provided customer support to Turkish Airlines, as it related to the subject aircraft and other 737-800 model aircraft in its possession, including Alert Service Bulletins, Service Bulletins, Service Letters, Technical Advisories, aircraft parts, engineering and training personnel, and other like customer support services.

10.      On February 25, 2009, HAKAN VERCAN was a fare-paying passenger on Flight 1951.

11.      On February 25, 2009, Flight 1951 was engaged in an Instrument Landing System (ILS) approach to runway 18R at Amsterdam Schiphol Airport when the left radio altimeter malfunctioned, causing the autothrottle to disregard the pilots' selected speed setting and to reduce the throttle level position to flight-idle, thereby allowing the airspeed of the subject aircraft to decrease 40 knots below the selected airspeed.

12.      On February 25, 2009, as a result of this loss of airspeed, Flight 1951 lost control, and the subject aircraft crashed into a field approximately one (1) mile north of runway 18R at Amsterdam Schiphol Airport in Amsterdam, Netherlands.

13.      At all times relevant hereto, Defendant, BOEING, owed Plaintiff the duty to design, manufacture, assemble, and/or sell the subject aircraft and the various components, some of which are mentioned above, in a reasonably safe condition.

14.      On and prior to February 25, 2009, in violation of the aforesaid duties, Defendant BOEING, by and through its employees and/or actual/apparent agents, was negligent in one or more

19

of the following ways:

    a.    Failed to provide proper and effective radio altimeters on their aircraft including the subject aircraft;

    b.    Failed to provide proper and effective flight control computers on their aircraft including the subject aircraft;

    c.    Failed to provide a proper and effective autothrottle on their aircraft including the subject aircraft;

    d.    Failed to provide proper and effective quick reference handbook procedures for radio altitude failures on their aircraft including the subject aircraft;

    e.    Failed to provide proper and effective simulator training events for unflagged radio altitude failures on their aircraft;

    f.    Failed to provide proper and effective autopilot on their aircraft including the subject aircraft;

    g.    Failed to provide a proper and effective comparator function for radio altitude on their aircraft including the subject aircraft;

    h.    Failed to provide proper and effective radio altitude fault detection on their aircraft including the subject aircraft;

    i.    Failed to provide adequate warning regarding the use of radio altimiters on their aircraft;

    j.    Failed to provide adequate warning regarding the use of flight control systems on their aircraft including the subject aircraft;

    k.    Failed to provide adequate warning regarding the use of autothrottle on their aircraft including the subject aircraft;

    l.    Failed to provide adequate warning regarding the use of autopilot on their aircraft including the subject aircraft;

    m.    Failed to provide adequate warning regarding the lack of a comparator function for radio altitude on their aircraft including the subject aircraft;

    n.    Failed to warn pilots to constantly monitor airspeed when autopilot and auto-throttle are engaged, especially during ILS approach;

o.    Failed to provide software that notified the pilots of a radio altitude failure on the primary flight display as a result of a problem with the radio altimeter transducer or antenna or other failure mode;

p.    Failed to provide a warning to the pilots that the primary flight display would not notify them of a failure of the radio altimeter if the radio altimeter returned an improper value in the manner that it would in the event of other types of radio altitude failures;

q.    Failed to properly and/or adequately inspect, maintain and/or repair the subject aircraft designated as flight number 1951;

r.    Failed to maintain the subject aircraft's radio altimeters;

s.    Permitted and allowed the subject aircraft to be flown when it knew or should have known it was not in an airworthy condition;

t.    Improperly and inadequately inspected and maintained the subject aircraft;

u.    Failed to properly and adequately test the subject aircraft;

v.    Improperly and inadequately tested and inspected the subject aircraft;

w.    Improperly designed the radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays including the subject aircraft;

x.    Improperly manufactured the radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays including the subject aircraft;

y.    Improperly assembled the radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays including the subject aircraft;

z.    Failed to provide proper and effective master minimum equipment list on their aircraft including the subject aircraft;

aa.   Failed to perform a proper and effective system safety analysis during original design of their aircraft including the subject aircraft;

21

bb. Failed to perform proper and effective continuing airworthiness functions after in-service events revealed radio altimeter failures such as occurred in this crash;

cc. Failed to perform proper and effective system safety analysis after in-service events revealed radio altimeter failures such as occurred in this crash;

dd. Failed to provide low airspeed or low energy warning functions on their aircraft;

ee. Was otherwise careless and negligent.

15. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, on February 25, 2009, at 10:31 a.m. CET, the left radio altimeter malfunctioned, causing the autothrottle to disregard the pilots' selected speed setting and to reduce the throttle level position to flight-idle, thereby allowing the airspeed of the subject aircraft designated as Flight 1951 to decrease 40 knots below the selected airspeed. As a result of this loss of airspeed, the subject aircraft designated as Flight 1951 lost control and crashed into a field approximately one (1) mile north of runway 18R at Amsterdam Schiphol Airport in Amsterdam, Netherlands.

16. When the subject aircraft crashed, HAKAN VERCAN was caused to and will in the future experience great pain and suffering; has suffered and will in the future suffer disability and disfigurement; has been caused to incur and will in the future incur expenses for necessary medical care, treatment and services; has suffered and will in the future suffer the loss of the value of his time, earnings, profits and salaries and has been and will be damaged in his earning capacity, and has otherwise been damaged in a personal and pecuniary nature.

17. As a direct and proximate result of the negligence of the Defendant, HAKAN VERCAN suffered fright, terror, mental anguish, emotional distress, and suffering resulting in physical manifestations and sustained permanent and temporary injuries of a personal and pecuniary

22

nature.

18.     On and before February 25, 2009, the Plaintiff, KEVSER VERCAN, was the lawfully wedded wife of HAKAN VERCAN.

19.     As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions of the Defendant Plaintiff, KEVSER VERCAN suffered a loss of society, services, love, affection, and consortium as a result of the injury to her husband, HAKAN VERCAN.

WHEREFORE, the Plaintiff KEVSER VERCAN prays that judgment be entered in her favor and against the Defendant, THE BOEING COMPANY, in a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00), the minimal jurisdiction amount of the Law Division of the Circuit Court of Cook County, Illinois together with interests and the costs of this action.

## COUNT V

### Strict Liability - Defendant The Boeing Company

Plaintiff KEVSER VERCAN, by and through her attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendant, THE BOEING COMPANY, (hereinafter "BOEING"), states as follows:

1.     On February 25, 2009, Defendant, BOEING, was engaged in the business of designing, manufacturing, assembling, testing, servicing, and selling commercial aircraft and various component parts for those aircraft.

2.     Defendant BOEING is a citizen of Cook County, Illinois.

3.     On February 25, 2009, Turkish Airlines, Inc., by and through its duly authorized agents and/or employees, owned, operated, managed, maintained and controlled a certain Boeing 737-800 aircraft, which was designated as Flight 1951 (hereinafter referred to as "Flight 1951" or

23

"subject aircraft") and was scheduled to depart from Ataturk International Airport (IST) in Istanbul, Turkey and land at Amsterdam Schiphol Airport (AMS) in Amsterdam, Netherlands.

4.      On a date prior to February 25, 2009, Defendant, BOEING, designed, manufactured, assembled, tested, serviced, and/or sold the subject aircraft and various components of the subject aircraft including, but not limited to, the radio altimeters, autothrottle, autopilot, flight control computers, and/or primary flight displays.

5.      The radio altimeters were located on the right and left sides of the cockpit and were intended to provide accurate data of the subject aircraft's altitude above ground level from ground level to 2,500 feet.

6.      The subject aircraft had an autothrottle system that was intended to maintain the airspeed as selected by the pilots.

7.      The subject aircraft's autothrottle system relied on the data from the left radio altimeter and was designed to set the throttles at flight idle when the radio altimeter indicates that the subject aircraft was on or very close to the ground.

8.      Prior to February 25, 2009, the Defendant, BOEING, wrote and/or approved instructions and warnings for the subject aircraft, including flight manuals, operation manuals, maintenance manuals, maintenance instructions, inspection schedules and service life schedules to be followed by certain owners and operators, including Turkish Airlines, for the continued airworthiness and safe flight of the Model 737-800 aircraft, including the subject aircraft.

9.      Prior to February 25, 2009, the Defendant, BOEING, provided customer support to Turkish Airlines, as it related to the subject aircraft and other 737-800 model aircraft in its possession, including Alert Service Bulletins, Service Bulletins, Service Letters, Technical

24

Advisories, aircraft parts, engineering and training personnel, and other like customer support services.

10.    On February 25, 2009, HAKAN VERCAN was a fare-paying passenger on Flight 1951.

11.    On February 25, 2009, Flight 1951 was engaged in an Instrument Landing System (ILS) approach to runway 18R at Amsterdam Schiphol Airport when the left radio altimeter malfunctioned, causing the autothrottle to disregard the pilots' selected speed setting and to reduce the throttle level position to flight-idle, thereby allowing the airspeed of the subject aircraft to decrease 40 knots below the selected airspeed.

12.    On February 25, 2009, as a result of this loss of airspeed, Flight 1951 lost control, and the subject aircraft crashed into a field approximately one (1) mile north of runway 18R at Amsterdam Schiphol Airport in Amsterdam, Netherlands.

13.    At all times relevant hereto, Defendant, BOEING, owed Plaintiff the duty to design, manufacture, assemble, and/or sell the subject aircraft and the various components, some of which are mentioned above, in a reasonably safe condition.

14.    At all relevant times including the time the subject aircraft left the custody and control of Defendant, BOEING, the subject aircraft was defective and unreasonably dangerous in one or more of the following ways:

    a.    Lacked proper and effective altimeters;

    b.    Lacked proper and effective flight control computers;

    c.    Lacked a proper and effective autothrottle;

    d.    Lacked proper and effective quick reference handbook procedures for radio

altitude failures;

e.    Lacked proper and effective simulator training events for unflagged radio altitude failures;

f.    Lacked a proper and effective autopilot;

g.    Lacked a proper and effective comparator function for radio altitude;

h.    Lacked adequate warning regarding the use of radio altimeters;

i.    Lacked adequate warning regarding the use of flight control systems;

j.    Lacked adequate warning regarding the use of autothrottle;

k.    Lacked adequate warning regarding the use of autopilot;

l.    Lacked adequate warning regarding the lack of a comparator function for radio altitude;

m.    Failed to warn pilots to constantly monitor aircraft velocity when autopilot is engaged, especially during ILS approach;

n.    Failed to provide software that notified the pilots of a radio altitude failure on the primary flight display as a result of a problem with the radio altimeter transducer or antenna;

o.    Failed to provide a warning to the pilots that the primary flight display would not notify them of a failure of the radio altimeter if the radio altimeter returned an improper value in the manner that it would in the event of other types of radio altitude failures;

p.    Failed to properly and/or adequately inspect, maintain and/or repair the aircraft designated as flight number 1951;

q.    Failed to maintain the aforementioned aircraft's radio altimeters;

r.    Permitted and allowed the aforementioned Boeing 737-800 aircraft to be flown when it knew or should have known it was not in an airworthy condition;

s.    Improperly and inadequately inspected and maintained the aforementioned Boeing 737-800 aircraft;

t.   Failed to properly and adequately test the aforementioned Boeing 737-800 aircraft;

u.   Improperly and inadequately tested and inspected the aforementioned Boeing 737-800 aircraft;

v.   The radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays were otherwise improperly designed;

w.   The radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays were otherwise improperly manufacturers;

x.   The radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays were otherwise improperly assembled;

y.   Lacked proper and effective radio altitude fault detection on their aircraft;

z.   Lacked low airspeed or low energy warning functions on their aircraft;

aa.  The aforementioned aircraft was otherwise defective.

15.   As a direct and proximate result of one or more of the above-listed defective and unreasonably dangerous conditions, on February 25, 2009, at 10:31 a.m. CET, the left radio altimeter malfunctioned, causing the autothrottle to disregard the pilots' selected speed setting and to reduce the throttle level position to flight-idle, thereby allowing the airspeed of the subject aircraft designated as Flight 1951 to decrease 40 knots below the selected airspeed. As a result of this loss of airspeed, the subject aircraft designated as flight number 1951 lost control and crashed into a field approximately one (1) mile north of runway 18R at Amsterdam Schiphol Airport in Amsterdam, Netherlands.

16.   When the subject aircraft crashed, HAKAN VERCAN was caused to and will in the future experience great pain and suffering; has suffered and will in the future suffer disability and disfigurement; has been caused to incur and will in the future incur expenses for necessary medical

27

care, treatment and services; has suffered and will in the future suffer the loss of the value of his time, earnings, profits and salaries and has been and will be damaged in his earning capacity, and has otherwise been damaged in a personal and pecuniary nature.

17.     As a direct and proximate result of the negligence of the Defendant, HAKAN VERCAN suffered fright, terror, mental anguish, emotional distress, and suffering resulting in physical manifestations and sustained permanent and temporary injuries of a personal and pecuniary nature.

18.     On and before February 25, 2009, the Plaintiff, KEVSER VERCAN, was the lawfully wedded wife of HAKAN VERCAN.

19.     As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions of the Defendant Plaintiff, KEVSER VERCAN suffered a loss of society, services, love, affection, and consortium as a result of the injury to her husband, HAKAN VERCAN.

WHEREFORE, the Plaintiff KEVSER VERCAN prays that judgment be entered in her favor and against the Defendant, THE BOEING COMPANY, in a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00), the minimal jurisdiction amount of the Law Division of the Circuit Court of Cook County, Illinois together with interests and the costs of this action.

## COUNT VI

### Willful and Wanton - Defendant The Boeing Company

Plaintiff KEVSER VERCAN, by and through her attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendant THE BOEING COMPANY, (hereinafter "BOEING"), states as follows:

1.     On February 25, 2009, Defendant, BOEING, was engaged in the business of

28

designing, manufacturing, assembling, testing, servicing, and selling commercial aircraft and various component parts for those aircraft.

2.      Defendant BOEING is a citizen of Cook County, Illinois.

3.      On February 25, 2009, Turkish Airlines, Inc., by and through its duly authorized agents and/or employees, owned, operated, managed, maintained and controlled a certain Boeing 737-800 aircraft, which was designated as Flight 1951 (hereinafter referred to as "Flight 1951" or "subject aircraft") and was scheduled to depart from Ataturk International Airport (IST) in Istanbul, Turkey and land at Amsterdam Schiphol Airport (AMS) in Amsterdam, Netherlands.

4.      On a date prior to February 25, 2009, Defendant, BOEING, designed, manufactured, assembled, tested, serviced, and/or sold the subject aircraft and various components of the subject aircraft including, but not limited to, the radio altimeters, autothrottle, autopilot, flight control computers, and/or primary flight displays.

5.      The radio altimeters were located on the right and left sides of the cockpit and were intended to provide accurate data of the subject aircraft's altitude above ground level from ground level to 2,500 feet.

6.      The subject aircraft had an autothrottle system that was intended to maintain the airspeed as selected by the pilots.

7.      The subject aircraft's autothrottle system relied on the data from the left radio altimeter and was designed to set the throttles at flight idle when the radio altimeter indicates that the subject aircraft was on or very close to the ground.

8.      Prior to February 25, 2009, the Defendant, BOEING, wrote and/or approved instructions and warnings for the subject aircraft, including flight manuals, operation manuals,

29

maintenance manuals, maintenance instructions, inspection schedules and service life schedules to be followed by certain owners and operators, including Turkish Airlines, for the continued airworthiness and safe flight of the Model 737-800 aircraft, including the subject aircraft.

9.      Prior to February 25, 2009, the Defendant, BOEING, provided customer support to Turkish Airlines, as it related to the subject aircraft and other 737-800 model aircraft in its possession, including Alert Service Bulletins, Service Bulletins, Service Letters, Technical Advisories, aircraft parts, engineering and training personnel, and other like customer support services.

10.      On February 25, 2009, HAKAN VERCAN was a fare-paying passenger on Flight 1951.

11.      On February 25, 2009, Flight 1951 was engaged in an Instrument Landing System (ILS) approach to runway 18R at Amsterdam Schiphol Airport when the left radio altimeter malfunctioned, causing the autothrottle to disregard the pilots' selected speed setting and to reduce the throttle level position to flight-idle, thereby allowing the airspeed of the subject aircraft to decrease 40 knots below the selected airspeed.

12.      On February 25, 2009, as a result of this loss of airspeed, Flight 1951 lost control, and the subject aircraft crashed into a field approximately one (1) mile north of runway 18R at Amsterdam Schiphol Airport in Amsterdam, Netherlands.

13.      At all times relevant hereto, Defendant, BOEING, owed Plaintiff the duty to not willfully and wantonlly design, manufacture, assemble, and/or sell the subject aircraft and the various components, some of which are mentioned above.

14.      On and prior to February 25, 2009, in violation of the aforesaid duties, Defendant

30

BOEING, by and through its employees and/or actual/apparent agents, acted willfully and wantonly in one or more of the following ways:

a.  Failed to provide proper and effective radio altimeters on their aircraft including the subject aircraft;

b.  Failed to provide proper and effective flight control computers on their aircraft including the subject aircraft;

c.  Failed to provide a proper and effective autothrottle on their aircraft including the subject aircraft;

d.  Failed to provide proper and effective quick reference handbook procedures for radio altitude failures on their aircraft including the subject aircraft;

e.  Failed to provide proper and effective simulator training events for unflagged radio altitude failures on their aircraft;

f.  Failed to provide proper and effective autopilot on their aircraft including the subject aircraft;

g.  Failed to provide a proper and effective comparator function for radio altitude on their aircraft including the subject aircraft;

h.  Failed to provide proper and effective radio altitude fault detection on their aircraft including the subject aircraft;

i.  Failed to provide adequate warning regarding the use of radio altimeters on their aircraft;

j.  Failed to provide adequate warning regarding the use of flight control systems on their aircraft including the subject aircraft;

k.  Failed to provide adequate warning regarding the use of autothrottle on their aircraft including the subject aircraft;

l.  Failed to provide adequate warning regarding the use of autopilot on their aircraft including the subject aircraft;

m.  Failed to provide adequate warning regarding the lack of a comparator function for radio altitude on their aircraft including the subject aircraft;

31

n.  Failed to warn pilots to constantly monitor airspeed when autopilot and auto-throttle are engaged, especially during ILS approach;

o.  Failed to provide software that notified the pilots of a radio altitude failure on the primary flight display as a result of a problem with the radio altimeter transducer or antenna or other failure mode;

p.  Failed to provide a warning to the pilots that the primary flight display would not notify them of a failure of the radio altimeter if the radio altimeter returned an improper value in the manner that it would in the event of other types of radio altitude failures;

q.  Failed to properly and/or adequately inspect, maintain and/or repair the subject aircraft designated as flight number 1951;

r.  Failed to maintain the subject aircraft's radio altimeters;

s.  Permitted and allowed the subject aircraft to be flown when it knew or should have known it was not in an airworthy condition;

t.  Improperly and inadequately inspected and maintained the subject aircraft;

u.  Failed to properly and adequately test the subject aircraft;

v.  Improperly and inadequately tested and inspected the subject aircraft;

w.  Improperly designed the radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays including the subject aircraft;

x.  Improperly manufactured the radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays including the subject aircraft;

y.  Improperly assembled the radio altimeters, flight control computers, autothrottle, autopilot and/or primary flight displays including the subject aircraft;

z.  Failed to provide proper and effective master minimum equipment list on their aircraft including the subject aircraft;

32

aa.   Failed to perform a proper and effective system safety analysis during original design of their aircraft including the subject aircraft;

bb.   Failed to perform proper and effective continuing airworthiness functions after in-service events revealed radio altimeter failures such as occurred in this crash;

cc.   Failed to perform proper and effective system safety analysis after in-service events revealed radio altimeter failures such as occurred in this crash;

dd.   Failed to provide low airspeed or low energy warning functions on their aircraft;

ee.   Was otherwise careless and negligent.

15.   As a direct and proximate result of one or more of the aforesaid willful and wanton acts and/or omissions, on February 25, 2009, at 10:31 a.m. CET, the left radio altimeter malfunctioned, causing the autothrottle to disregard the pilots' selected speed setting and to reduce the throttle level position to flight-idle, thereby allowing the airspeed of the subject aircraft designated as Flight 1951 to decrease 40 knots below the selected airspeed. As a result of this loss of airspeed, the subject aircraft designated as Flight 1951 lost control and crashed into a field approximately one (1) mile north of runway 18R at Amsterdam Schiphol Airport in Amsterdam, Netherlands.

16.   When the subject aircraft crashed, HAKAN VERCAN was caused to and will in the future experience great pain and suffering; has suffered and will in the future suffer disability and disfigurement; has been caused to incur and will in the future incur expenses for necessary medical care, treatment and services; has suffered and will in the future suffer the loss of the value of his time, earnings, profits and salaries and has been and will be damaged in his earning capacity, and has otherwise been damaged in a personal and pecuniary nature.

17.     As a direct and proximate result of the willful and wanton conduct of the Defendant, HAKAN VERCAN suffered fright, terror, mental anguish, emotional distress, and suffering resulting in physical manifestations and sustained permanent and temporary injuries of a personal and pecuniary nature.

18.     On and before February 25, 2009, the Plaintiff, KEVSER VERCAN, was the lawfully wedded wife of HAKAN VERCAN.

19.     As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions of the Defendant Plaintiff, KEVSER VERCAN suffered a loss of society, services, love, affection, and consortium as a result of the injury to her husband, HAKAN VERCAN.

WHEREFORE, Plaintiff KEVSER VERCAN prays that judgment be entered in her favor and against the Defendant, THE BOEING COMPANY, in a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00), the minimal jurisdiction amount of the Law Division of the Circuit Court of Cook County, Illinois together with interests and the costs of this action.

_____
Attorney For Plaintiff

Robert A. Clifford
Kevin P. Durkin
Thomas K. Prindable
Michael S. Krzak
Colin H. Dunn
CLIFFORD LAW OFFICES, P.C.
120 North LaSalle Street, Suite 3100
Chicago, Illinois 60602
(312) 899-9090
Atty No.: 32640

34

STATE OF ILLINOIS     )
                           )
COUNTY OF C O O K    )

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

|  |  |  |
|---|---|---|
| HAKAN VERCAN and | ) | |
| KEVSER VERCAN | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| THE BOEING COMPANY | ) | ***Plaintiff Demands*** |
| | ) | ***Trial By Jury*** |
| | ) | |
| Defendants. | ) | |

### <u>AFFIDAVIT REGARDING DAMAGES SOUGHT</u>

Michael S. Krzak, being first duly sworn under oath, states as follows:

1.     That the affiant is one of the attorneys of record for the parties in this matter.

2.     That the total money damages sought in this civil action exceeds the amount of $50,000.00.

FURTHER AFFIANT SAYETH NOT.

By:_____

          MICHAEL S. KRZAK

SUBSCRIBED AND SWORN to before me this 21st day of June, 2010.

_____
         Notary Public

"OFFICIAL SEAL"
Jacqueline M. Gribbon
Notary Public, State of Illinois
My Commission Expires Jan. 16, 2014